

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-114-CV

R. W. ROGERS, SR.                                                    APPELLANT

V.

ARLETHA GARLAND FRANKLIN                                             APPELLEE

------------

### FROM THE 348TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant R.W. Rogers, Sr. complains that the trial court erred by dismissing his case against Appellee Arletha Franklin for want of prosecution. We will affirm.

---

[1] *See* TEX. R. APP. P. 47.4.

## I. BACKGROUND AND PROCEDURAL HISTORY

Rogers, an inmate serving a forty-year sentence, filed this suit and appeal pro se. In the underlying suit, filed on June 20, 1997, Rogers alleged that Franklin, a longtime family friend, had illegally obtained proceeds from four life insurance policies after the death of Rogers's mother. In his original petition, Rogers requested that the trial court serve Franklin by U.S. mail. The trial court attempted service, but someone other than Franklin signed the return receipt, rendering service invalid. On October 7, 1997, before the return receipt with the incorrect signature was filed, the trial court notified Rogers by letter of its intent to set the case on the dismissal docket. In the letter, the trial court judge told Rogers that the case had been on file in excess of ninety days "without service being effected."

The trial court sent a second notice of intent to dismiss, stating that the defendant had not filed an answer and that Rogers had sixty days to take all appropriate actions to secure a default judgment or the case would be set for dismissal for want of prosecution. Rogers then sent a letter to the trial court and requested that it enter a default judgment. The trial court did not respond, prompting several letters from Rogers demanding to know why the trial court had not ruled on his request. In total, the trial court sent Rogers eight notices of intent to dismiss the case, and Rogers filed five motions to maintain the case

2

on the docket. On October 5, 2006, the trial court granted Rogers's fifth motion to maintain the case on the docket and sent a letter to Rogers informing him that he had never completed service on Franklin because someone other than Franklin had signed the return receipt. The trial court judge also informed Rogers that the court would not maintain the case on the docket again if Rogers did not pursue his case with due diligence, including securing good service on Franklin by December 7, 2006.

On October 20, 2006, Rogers responded to the trial court's notice by filing a motion to re-issue service of process, in which he asked the court to serve Franklin by U.S. mail. On that same day, Rogers sent a letter to the trial court requesting that it serve Franklin by U.S. mail *or* for it to "exercise its power to call upon the Tarrant [County] Deputy Marshal's [Department] to serve the Defendant[,] and if need be[,] the U.S. [Deputy Marshal's Department] pursuant to [Federal Rule of Civil Procedure 4-(b)ii-iii] . . . ." On October 25, 2006, the trial court re-attempted to serve Franklin by U.S. certified mail. The citation returned unclaimed on December 6, 2006, and pursuant to the last letter of intent to dismiss, the trial court dismissed the case for want of prosecution on December 7, 2006, nine and one-half years after Rogers filed his original petition.

## II. DISMISSAL FOR WANT OF PROSECUTION

In his first two issues, Rogers argues that the trial court erred by dismissing his case for want of prosecution because (1) it failed to inform him that Franklin had not been properly served and (2) it did not re-issue service by hand delivery in the manner in which Rogers had requested.

We review a trial court's order dismissing a case for want of prosecution for a clear abuse of discretion. *MacGregor v. Rich*, 941 S.W.2d 74, 75 (Tex. 1997); *Smith v. McKee*, 145 S.W.3d 299, 302 (Tex. App.—Fort Worth 2004, no pet.). A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without reference to guiding rules and principles. *McKee*, 145 S.W.3d at 302–03.

A trial court may dismiss a case for want of prosecution under rule 165a of the Texas Rules of Civil Procedure or under its inherent power. *See* TEX. R. CIV. P. 165a; *Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 850 (Tex. 2004)*; Villarreal v. San Antonio Truck & Equip.*, 994 S.W.2d 628, 630 (Tex. 1999). A trial court may dismiss a case under rule 165a if a party seeking affirmative relief fails to appear for any hearing or trial of which the party had notice or when a case is not disposed of within the time standards promulgated by the supreme court. TEX. R. CIV. P. 165a(1)–(2). In addition, the common law vests the trial court with the inherent power to dismiss independently of

4

the rules of procedure when a plaintiff fails to prosecute his or her case with due diligence. *Villarreal*, 994 S.W.2d at 630. To determine whether due diligence exists, the trial court may consider the entire history of the case, including the length of time the case was on file, the extent of activity in the case, whether a trial setting was requested, and the existence of reasonable excuses for delay. *Polk v. Sw. Crossing Homeowners Ass'n*, 165 S.W.3d 89, 97 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

In all but the first two notices of intent to dismiss, the trial court informed Rogers that it intended to dismiss the case pursuant to both rule 165a and its inherent power. Likewise, the trial court stated in its order dismissing the case that it was acting based on its express authority in rule 165a and its inherent power. The trial court specifically stated in the final order that it found that Rogers had failed to take action as requested by the court and prosecute the case with *due diligence*, thus implicating its inherent power. Moreover, Rogers's complaints are directed at the trial court's dismissal based on due diligence as it pertains to incomplete service of process. Thus, we will review the record to determine whether the trial court abused its discretion by dismissing the case under its inherent power.

**A. Notice of Incomplete Service of Process**

Rogers first complains that the trial court erred by dismissing the case because it failed to inform him for nine years that Franklin had not been properly served. The record belies any assertion that he was wholly unaware that service had not been completed because the trial court sent a letter to Rogers on October 7, 1997, stating that service had not been "effected." Rogers acknowledged that he had received the trial court's letter stating that service had not been completed in a letter he sent to the trial court on November 14, 1997. In that letter, Rogers asked the trial court to see that service was completed but gave no instruction on how to carry out this request.

The record shows that when the trial court sent the letter to Rogers on October 7, 1997, the return receipt had not been filed with the clerk evidencing an improper signature—the error that precluded complete service. Thus, despite having notice that service had not been "effected," Rogers asserts that he was unaware of the exact reason why service was incomplete. From his communications with the trial court, it appears that Rogers thought that the trial court had never issued citation at all. The return receipt with the incorrect signature was on file since October 14, 1997, and would have answered any question as to why service was incomplete. There is no evidence on the record that shows that Rogers ever requested a copy of the return receipt, but we

6

acknowledge that Rogers requested that the trial court inform him of what was wrong with his suit, whether there was anything that was missing or needed to be supplied, and whether citation was delivered. He specifically asked what date citation was delivered, and if it was not delivered, why it was not delivered. The trial court failed to respond to any of these inquiries until it sent Rogers a letter on October 5, 2006, and told him that someone other than Franklin had signed the return receipt. We agree with Rogers that the record shows a general lack of communication on the part of the trial court regarding these matters, but because the trial court eventually re-attempted service on Franklin before it dismissed the case, among other reasons discussed below, we cannot say that this deficient communication rendered the dismissal an abuse of discretion.

**B.    Delivery of Citation**

Rogers also complains that the trial court erred by dismissing his case because it failed to act on his motion to re-issue service of process by not hand delivering the citation to Franklin. Rule 99 of the Texas Rules of Civil Procedure governs issuance and form of citation, stating that it is the clerk's duty, when requested, to issue a citation and deliver the citation as directed by the requesting party. TEX. R. CIV. P. 99(a). The clerk does not complete his duty under the rule until he delivers the citations as directed. *Boyattia v. Hinojosa*,

7

18 S.W.3d 729, 733–34 (Tex. App.—Dallas 2000, pet. denied). A party may ordinarily rely on the clerk to perform his duty within a reasonable time. *Id*. at 734. But when a party learns, or by the exercise of diligence should have learned, that the clerk has failed to fulfill his duty under rule 99, it is incumbent upon the party to ensure that the job is done. *Id*.

Rogers requested in his motion to re-issue that the trial court re-issue citation to Franklin by U.S. mail. He then requested by letter that the trial court re-issue citation by U.S. mail *or* "in light [of] the prior problems," for the trial court to order a U.S. marshal or deputy marshal to deliver citation under Federal Rule of Civil Procedure 4. *See* FED. R. CIV. P. 4(c)(3). Rogers maintained that he was entitled to such action by the trial court because of his indigent status. *See id*. ("At the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court. The court *must* so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915 . . . ." (emphasis added)). Rogers's assertions are misplaced. First, Rogers mistakenly requested action by a state district court under a Federal Rule of Civil Procedure. Second, although Rogers maintained that he was indigent, he never filed an affidavit or

a valid substitute with the trial court to that effect.[2] Third, Rogers was not clear on which method the trial court was to use in serving Franklin; he requested that the trial court mail the citation *or* have a marshal deliver it. He also stated in one paragraph of the letter to the court that he was enclosing an envelope and stamps to send citation to Franklin and then in the next paragraph of the document requested that a marshal deliver citation. For all the above reasons, the trial court properly responded to the motion to re-issue by attempting service by U.S. certified mail within a reasonable time and dismissed the case for want of prosecution once the return receipt came back unclaimed.

Although Rogers's complaint centers mainly on the motion to re-issue, we note that over the nine and one-half years that the case was on the trial court's docket, Rogers requested four times, not including the original petition or

---

[2] Even though Rogers incorrectly relied on a Federal Rule of Civil Procedure, he was likewise required under a similar Texas Rule of Civil Procedure to file an affidavit of indigency to demand that the trial court send citation to Franklin. *See* TEX. R. CIV. P. 145(a) ("Upon the filing of the affidavit [of indigency], the clerk *must* docket the action, *issue citation* and provide such other customary services as are provided any party." (emphasis added)); *Aguilar v. Stone*, 901 S.W.2d 955, 955 (Tex. App.—Houston [1st Dist.] 1995, orig. proceeding) (stating that a pro se plaintiff who files an affidavit of indigency under rule 145 is entitled to the issuance of citation). Alternatively, because he was an inmate, Rogers could have filed an unsworn declaration of indigency in lieu of an affidavit of indigency, but he failed to do so. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 132.001–.003 (Vernon Supp. 2007); *Thomas v. Pankey*, 837 S.W.2d 826, 830 (Tex. App.—Tyler 1992, no writ). Rogers has, however, filed a pauper's affidavit with this court to proceed as an indigent on appeal.

9

motion to re-issue, to have the trial court serve Franklin. However, none of these requests informed the trial court of the manner in which the clerk was to serve Franklin. *See Allen v. Rushing*, 129 S.W.3d 226, 231 (Tex. App.—Texarkana 2004, no pet.) (holding in part that the trial court did not abuse its discretion by dismissing a pro se inmate's case for want of prosecution when he requested that the court send citation but failed to specify a manner of delivery of citation); *see also Cordova v. Hodge*, No. 13-06-00640-CV, 2007 WL 4112018, at *4 (Tex. App.—Corpus Christi Nov. 20, 2007, no pet.) (mem. op.) (not designated for publication) (same).

Two times, Rogers requested that the trial court serve Franklin pursuant to various Federal Rules of Civil Procedure, some of which list ways to serve a defendant; however, Rogers never specified a particular method. Additionally, Rogers asked that the trial court send Franklin, by U.S. mail, a copy of the motions and letters that contained his requests for issuance of service, but he never specifically addressed the delivery method for issuance of service. Thus, Rogers failed to give the clerk any direction regarding the method and manner of delivery as required under rule 99. *See* TEX. R. CIV. P. 99, 103 (who may serve), 106 (method of service); *Allen*, 129 S.W.3d at 231. In any event, Rogers was not harmed by the trial court's failure to send citation pursuant to

10

these general requests because the trial court eventually re-attempted service on Franklin before it dismissed the case.[3]

## C.    Due Diligence

Rogers's case remained on the trial court's docket for nearly a decade. During these nine and one-half years, Rogers never secured service of process on Franklin. And although, at times, Rogers actively tried to pursue the case by requesting a default judgment, filing discovery motions, writing letters regarding the status of his case, and submitting proposed pretrial orders, he also remained silent for months, and sometimes years, at a time. For instance, on July 16, 1998, Rogers sent a letter to the trial court and requested that it explain why his default judgment had not been granted but failed to take any further action until he filed a motion to maintain the case on the docket eighteen months later on January 31, 2000. Again, Rogers sent a letter to the trial court on March 2, 2001 but failed to take any further action for thirteen months, when he filed a motion to maintain the case on the docket on April 18, 2002. The longest delay occurred when Rogers filed a motion to maintain the

---

[3] We also note that Rogers stated in a motion to maintain the case on the docket filed on April 18, 2002, that he would file a writ of mandamus if the trial court did not complete service on Franklin, but he failed to take any such action.

case on the docket on May 21, 2003, and remained silent for over three years until he filed another motion to maintain the case on the docket on September 28, 2006. None of Rogers's responses listed above were self-initiated but were instead prompted by the trial court's notices of intent to dismiss the case. Further, Rogers has provided no explanations for these delays, and we find none on the record.

We acknowledge the challenges that Rogers faced as a pro se plaintiff in prison, but as a pro se plaintiff in a civil case, he had the burden of prosecuting his case with diligence the same as any licensed attorney. *Allen*, 129 S.W.3d at 231. We also note that Rogers requested several times for the trial court to appoint an attorney to help him pursue his case with diligence. Rogers repeatedly attempted to cast this case as a civil rights action and alleged that Franklin "violated his [c]onstitutional right to [d]ue process and [e]qual [p]rotection," but he never showed the trial court that this was an "exceptional" civil case, in which the "public and private interests at stake [were] such that the administration of justice [would have been] best served by appointing a lawyer." *See Travelers Indemnity Co. v. Mayfield*, 923 S.W.2d 590, 594 (Tex. 1996); *Coleman v. Lynaugh*, 934 S.W.2d 837, 839 (Tex. App.—Houston [1st Dist.] 1996, no writ). Rogers pointed to his alleged mental incapacity as a bipolar patient taking medication as an impairment on his ability to pursue his

case with diligence, but there is nothing in the record that demonstrates the severity of Rogers's disorder or its effect on his ability to communicate with the trial court.

Even though we have noted a general lack of communication by the trial court, in reviewing the entire record, we cannot say that the trial court abused its discretion by dismissing the case for want of prosecution when it attempted on behalf of Rogers to complete service of process twice, granted five motions to maintain the case on the docket, and kept the case on the docket for nine and one-half years in light of year-long voids in activity and incomplete service of process. For the above reasons, we overrule Rogers's first two issues.

### III. RELIEF FROM JUDGMENT

In his third issue, Rogers argues that the trial court erred by refusing to rule on his "relief from judgment" filed on December 27, 2006. In this motion, Rogers asked the trial court to grant him relief from the order dismissing the case and to attempt to secure service of process for a third time. However, in order for the trial court to take such action, Rogers had to file a verified motion to reinstate the case. *See* TEX. R. CIV. P. 165a. The relief from judgment filed with the trial court was not verified,[4] and therefore, cannot be construed as a

---

[4] As an inmate in prison, Rogers could have also filed unsworn declarations in lieu of a verified motion to reinstate. *See* TEX. CIV. PRAC. & REM.

13

motion to reinstate.  *Cf. City of McAllen v. Ramirez*, 875 S.W.2d 702, 705 (Tex. App.—Corpus Christi 1994, no writ) ("The requirement of a verified motion to reinstate is meaningless if the same general relief may be requested by filing an unverified motion for new trial."). We accordingly overrule Rogers's third issue.

## IV. CONCLUSION

Having overruled all of Rogers's issues, we affirm the trial court's judgment.

PER CURIAM

PANEL F:  HOLMAN, GARDNER, and WALKER, JJ.

DELIVERED:  April 24, 2008

---

CODE ANN. §§ 132.001–.003 (Vernon Supp. 2007).  However, the language at the end of the relief from judgment—"all of the aforesaid is true and correct"—does not meet the requirements of section 132.002 because it does not state that the declarations were made "under penalty of perjury."  *See id*. § 132.002 ("An unsworn declaration made under this chapter must be: (1) in writing; and (2) subscribed by the person making the declaration as true under penalty of perjury."); *Bahm v. State*, 219 S.W.3d 391, 394 (Tex. Crim. App. 2007) (stating that "[t]he only phrase that the Legislature actually mandates should be included in such declarations is "under penalty of perjury"); *Mitchell v. Houston Hous. & Urban Dev.*, No. 14-00-00142-CV, 2000 WL 1201698, at *2 (Tex. App.—Houston [14th Dist.] Aug. 24, 2000, pet. denied) (not designated for publication) (holding that the appellant failed to substantially comply with the requirements for an unsworn declaration because he failed to state that his declarations in his motion to reinstate were made "under penalty of perjury").

14